**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | | |
|---|---|---|
| TIMOTHY SAMUELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 24-cv-1247 |
| | ) | |
| FOREMOST INSURANCE COMPANY | ) | |
| GRAND RAPIDS, MICHIGAN, d/b/a | ) | |
| FOREMOST INSURANCE GROUP, a | ) | |
| foreign corporation, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**ORDER AND OPINION**</u>

Plaintiff Timothy Samuell owned a residence in Lewiston, Illinois ("the Property"), that he claims sustained hail and wind damage on April 4, 2023. At that time, the Property was covered under an insurance policy ("the Policy") issued by Defendant Foremost Insurance Company Grand Rapids, Michigan ("Foremost"), but Foremost denied the claim. Samuell then sued Foremost for breach of contract and bad faith in the Ninth Judicial Circuit Court in Fulton County, Illinois. Foremost removed the case to this Court based on diversity jurisdiction. (D. 1[1]).

Following removal, Samuell filed an amended complaint alleging breach of contract. (D. 9). Foremost has now moved for summary judgment pursuant to Fed. R. Civ. P. 56. (D. 19). For the reasons set forth below, Foremost's motion is GRANTED.

## I.　BACKGROUND

### A. Local Rule 7.1(D):

Before addressing the facts, Foremost's Reply argues that Samuell's Response fails to comply with Local Rule 7.1(D). Therefore, we will start with a note on procedure. This Court's

---

[1] Citations to the docket are abbreviated as (D. __).

Local Rules govern how parties file and respond to motions for summary judgment. *See* CDIL –

L.R. 7.1(D). A party opposing summary judgment must "list by number each fact from" the

movant's summary judgment motion that is undisputed and material, disputed and material,

disputed and immaterial, and undisputed and immaterial. *Id.* at 7.1(D)(2)(b)(1)–(4). When the

nonmovant disputes a fact, it must support its response with "evidentiary documentation

referenced by specific page." *Id.* at 7.1(D)(2)(b)(2)–(3). "These requirements coincide

with Federal Rule of Civil Procedure 56(c), which, among other things, requires a party opposing

summary judgment to address the moving party's assertion of facts." *Osborn v. JAB Management

Serv. Inc.*, 126 F.4th 1250, 1254 (7th Cir. 2025) (discussing compliance with CDIL L.R. 7.1(D)).

Compliance with these rules not only benefits the parties by clarifying exactly what is in dispute

and on what evidence they rely, but also greatly benefits the court which does not have the same

familiarity with the record as the parties. *See Waldridge v. American Hoechst Corp.*, 24 F.3d 918,

923–24 (7th Cir. 1994).

Here, Samuell's Response fails to comply with the Local Rules as above described.

Foremost's "Undisputed Material Facts" included 27 paragraphs, divided into three subsections:

"A. Facts Relating To Claimed Damage" (paragraphs 1-12); "B. Relevant Policy Provisions"

(paragraphs 13-17); and "C. Plaintiff's Claims and Evidence In This Lawsuit" (paragraphs 18-27).

(D. 19, pp. 6–14). Samuell's Response does not acknowledge whether each of Foremost's

"Undisputed Material Facts" are material or immaterial. Samuell only responds "PLAINTIFF

ADMITS" to paragraphs 1-7, 9, 11-18, 22-23, and 26. But when "admitting" to Foremost's

proposed "Material Undisputed Facts" Samuell's Response essentially rewrites them, often

leaving out various portions of Foremost's corresponding fact. This was done to varying degrees

for fact numbers 6,7, 9, 11–18, and 22–23. (Compare (D. 19, pp. 7–14) and (D. 20, pp. 3–5)).

2

"Rule 56 provides district courts with the authority to take appropriate measures when a party 'fails to properly address another party's assertion of fact,' including…'consider[ing] the fact undisputed for purposes of the motion.'" *Osborn*, 126 F.4th at 1254 (quoting Fed. R. Civ. P. 56(e)(1)–(2)). Consistent with Rule 56(e), under this Court's Local Rules, "a nonmovant's 'failure to respond to any numbered fact' in the movant's motion for summary judgment is 'deemed an admission of the fact.'" *Id.* (quoting CDIL–L.R. 7.1(D)(2)(b)(6)). Accordingly, Foremost's Fact Nos. 1-7, 9, 11-18, 22-23, and 26 are deemed admitted in their entirety for summary judgment purposes.

The remaining facts (Foremost's "Undisputed Material Fact" Nos. 8, 10, 19–21, 24–25, and 27) were denied, either in whole or in part. None of these denials, however, were supported with citations to "evidentiary documentation" in the record. *See* CDIL – L.R. 7.1(D)(2)(b)(2)–(3). Accordingly, Foremost's Fact Nos. 8, 10, 19–21, 24–25, and 27 are also deemed admitted for summary judgment purposes. *See* Fed. R. Civ. P. 56(e); *see also Waldridge*, 24 F.3d at 922 (explaining the Seventh Circuit's willingness to strictly enforce district court's local rules). We will now turn to the facts of this case.

**B. Undisputed Facts:**

As discussed, this case arises from an insurance coverage dispute regarding the Property, which was Samuell's personal residence located in Lewiston, Illinois. Under the Policy, Foremost provided Samuell certain insurance coverage for the Property from January 23, 2023, through January 28, 2024. Following a storm on April 4, 2023, Samuell submitted an insurance claim reporting hail and wind damage to the Property. After investigating, Foremost denied Samuell's claim. Foremost's November 9, 2023, denial letter stated in part:

> On November 9, 2023, we reviewed a report received from Nederveld, Inc., a
> Forensic Engineer. Their inspection of your home found that the asphalt shingles

on your roof have not been damaged by hail. They did observe indentations consistent with hail to one side of metal trim on an awning on the south elevation of your home. The remaining metals and claddings were found to be free of hail caused indentations, fractures, and blemishes. Fractures seen on siding were found to be mechanical in nature and not caused by hail. Unfortunately there is no coverage for your claim based on the information we have at this time. Damage caused by marring to metals on the home is specifically excluded by your policy and there is no coverage for repair or replacement of the metal trim on the awning that has indentations from hail. Our coverage decision made previously based on prior inspections remains unchanged.

(D. 19-3, p. 2).

Under the Policy's "Exclusions" provisions, it states that loss caused by marring is not insured regardless of any other cause of event contributing to the loss. The Policy defines "marring" as "any disfigurement, blemish, discoloration, weathering, or stretching, or the like, of or to insured property, including, but not limited to, scratching, chipping, cracking, scorching, denting, creasing, gouging, fading, staining, tearing, oxidizing, blistering, or thinning, whether occurring at once or over time." (D. 19-2, p. 22). The Policy also excludes loss caused by weather conditions including wind and hail if it contributes to or combines with any other cause or loss excluded under the Policy. *Id.* at p. 34.

In the event "non-excluded" damage occurs, "Section I – Our Payment Methods" of the Policy sets forth how Foremost will measure the amount payable to the policyholder. *See id.* at pp. 35–36. For damage to "roof materials" the Policy uses the following "Scheduled Roof Payment Method:"

> **Section I - Our Payment Methods . . .**
> For purposes of settlement of an insured loss to **roof materials**, the **scheduled roof payment** is deemed to be and will determine the **actual cash value** of the loss.
>
> **Coverage A – Dwelling . . .**
>
> **Partial Loss – Roof Materials**

> **Scheduled Roof Payment Method**
> The amount we pay for loss of or damage to **roof materials** for your dwelling will be the lowest of:
>> 1. The **scheduled roof payment**;
>> 2. The amount required to repair or replace the damaged **component parts** of your **roof materials**; or
>> 3. The Amount of Insurance shown on the Declarations Page for Coverage A - Dwelling.

*Id.* at p. 35 (emphasis in original). The Policy defines "**scheduled roof payment**" and "**actual cash value**" as follows:

> **Actual cash value** means the amount it would cost to repair or replace insured property with new property of like kind and quality, less allowance for physical deterioration, depreciation, and obsolescence. Our adjustment for physical deterioration, depreciation, and obsolescence applies to all costs, including the costs of labor and materials. Neither the **actual cash value** nor the cost to repair or replace will include amounts for contractor's fees or charges for overhead and profit except to the extent such fees and charges are reasonable and incurred.

> \*\*\*

> **Scheduled roof payment** means all the estimated reasonable costs to repair or replace insured loss of or damage to any **roof materials** multiplied by the **scheduled roof payment percentage**. All costs include, but are not limited to, debris removal, labor, taxes, fees, and any increased costs due to any **building law** or general contractor's fees or charges.

> **Scheduled roof payment percentage** means the applicable percentage shown on the chart in **Appendix A** determined by the age of the **roof surface material** and the type of the **roof surface material** as of the date of loss.

*Id.* at pp. 20, 24 (emphasis in original).

For covered loss to "other than roof materials," the Policy's "Actual Cash Value Payment Method," set forth below, applies:

> **Partial Loss - Other Than Roof Materials**

> **Actual Cash Value Payment Method**
> The amount we pay for loss of or damage to your dwelling will be the lowest of:
>> 1. The **actual cash value** of the lost or damage component parts of your dwelling at the time of the loss;

> 2. The amount required to repair or replace the lost or damaged **component parts** of your dwelling; or
> 3. The Amount of Insurance shown on the Declaration Page for Coverage A – Dwelling.

*Id.* at p. 35 (emphasis in original).

Here, the roof was installed prior to Samuell purchasing the Property. Samuell does not know when the roof was installed, who it was installed by, or if there had been any maintenance or repairs done to the roof prior to him purchasing the Property. He also testified that he lacked the knowledge and expertise to provide an opinion regarding the remaining life expectancy of the roof. To date, the Property damage Samuell claims was caused by the April 4, 2023, storm has not been repaired or replaced. Samuell also has no opinion regarding the "actual cash value" or the amount of the "scheduled roof payment" (which  the Policy defines as actual cash value of the "roof materials") of the was alleged damage. When asked what the total amount of damage he was claiming Foremost owed him for the alleged damage to the roof, Samuell testified that he really did not know and that he had not personally developed an opinion regarding damages. Rather, he testified that he was relying on others to develop estimates and opinions on damages. Samuell, however, did not subsequently disclose any such witnesses, opinions, or reports.

### C.  Procedural History:

Plaintiff's Amended Complaint alleges "Foremost's denial of payment of claim proceeds, for exterior and interior damage, is a breach of its contractual obligations and has caused damage to Plaintiff…in an amount exceeding $75,000." (D. 9). Foremost has denied all material allegations of the Amended Complaint. (D. 10). On October 29, 2024, the parties filed a proposed Discovery Plan, which was adopted by the Court. (D. 12); *see also Text Order* on 10/30/2023.[2]

---

[2] The original discovery plan set the following deadlines: initial Fed. R. Civ. P. 26(a)(1) disclosures due by 11/22/2024; fact discovery closed on 06/27/2025; Plaintiff's Rule 26(a)(2) disclosures due by 07/25/2025; Defendant's Rule 26(a)(2) due by 08/22/2025; and all discovery closed on 10/10/2025. (D. 12); *Text Order* on 10/30/2025.

6

On June 26, 2025, Foremost filed a motion to amend the discovery plan. (D. 17). In that motion, Foremost stated that it had sent Samuell's attorney a letter on June 18, 2025, regarding deficiencies in their discovery responses and the need to amend the court ordered discovery deadlines in order to complete discovery, and Samuell's attorney did not respond. (D. 17, p. 2). The Court adopted Foremost's proposed amended discovery plan, which contained the following discovery deadlines:

> a. Close of fact discovery is August 25, 2025;
> b. Rule 26(a)(2) Disclosures by Plaintiff (w/ Reports for Rule 26(a)(2)(B) witnesses) deadline is September 26, 2025;
> c. Rule 26(a)(2) Disclosures by Defendant (w/ Reports for Rule 26(a)(2)(B) witnesses) deadline is October 27, 2025;
> d. Completion of all expert discovery deadline is December 8, 2026

(D. 17; *Text Order* from 06/27/2025).

On September 8, 2025, Foremost's attorney wrote Samuell's attorney in an effort to meet and confer regarding Samuell's deficient discovery responses and failure to comply with Court ordered discovery deadline. (D. 19-6). In that letter, Foremost asked whether Samuell would be making his Rule 26(a)(2) expert witness disclosures by the September 26th deadline as they still had not received his Rule 26(a)(1) disclosures. *Id.* Foremost also wrote that they still had not received any documents in responses to its requests for production and material deficiencies in Samuell's answers to interrogatories. *Id.* The correspondence did not result in Samuell making any Rule 26(a)(1) or Rule 26(a)(2) disclosures. After Samuell's Rule 26(a)(2) deadline, Foremost's attorney again wrote Samuell's to inquire as to whether his Rule 26(a)(2) disclosures would be made, and no response was received. (D. 19-7). Foremost then made its Rule 26(a)(2) disclosures, and discovery closed. Foremost then moved for summary judgment arguing that Samuell has not presented evidence of his damages. (D. 19). This Motion is presently before the Court.

## II.    LEGAL STANDARDS

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Hemsworth v. Quotesmith.com*, 476 F.3d 487, 489–90 (7th Cir. 2007); Fed. R. Civ. P. 56. "In deciding motions for summary judgment, courts must consider the evidence as a whole," *de Lima Silva v. Dep't of Corrs.*, 917 F.3d 546, 559 (7th Cir. 2019), and "view[ ] the record and all reasonable inferences . . . drawn from it in the light most favorable to the nonmoving party," *Laborers' Pension Fund v. W.R. Weis Co., Inc.*, 879 F.3d 760, 766 (7th Cir. 2018). However, the court will not draw inferences that are "supported by only speculation or conjecture," *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008), and "[c]onclusory allegations alone cannot defeat a motion for summary judgment." *Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 892 (7th Cir. 2003). A party who bears the burden of proof on a particular issue must affirmatively demonstrate, with specific allegations supported by appropriate citations to relevant admissible evidence, that a genuine issue of material fact exists. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923-24 (7th Cir. 1994).

It is not the role of the [c]ourt to scour the record in search of evidence to defeat a motion for summary judgment; instead, the nonmoving party bears the responsibility of identifying evidence to defeat summary judgment." *Aberman v. Bd. of Educ. of City of Chi.*, 242 F. Supp. 3d 672, 685 (N.D. Ill. 2017) (citing *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008)). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations omitted).

8

## III. DISCUSSION

Here, Foremost argues that summary judgment should be entered in its favor because Samuell has produced no evidence regarding the extent and amount of damage that are payable by Foremost under the Policy's terms. *Harbor House Condo. Ass'n v. Massachusetts Bay Ins. Co.*, 915 F.2d 316, 318 (7th Cir. 1990) ("The burden was on the plaintiffs to prove the extent and amount of their damages to a reasonable degree of certainty."). Foremost also argues that in order for Samuell to do so, he would need expert witness testimony but did not make any Rule 26(a)(2) disclosures, and the time to do so has now passed.

Samuell's Response does not directly address Foremost's arguments in violation of Local Rule 7.1(D)(2)(c), which instructs on responding to the movant's summary judgment argument and states:

> With or without additional citations to authorities, respond directly to the argument in the motion for summary judgment, for example, by explaining any disagreement with the movant's explanation of each point of law, why a point of law does not apply to the undisputed material facts, why its application does not entitle movant to relief or why, for other reasons, summary judgment should not be granted.

CDIL – L.R. 7.1(D)(2)(c).

Without citing to any supporting case law or the record, Samuell's Response argues that Foremost's Motion "is premised on the assertion that Plaintiff cannot establish causation or damages without expert testimony[.]" (D. 20, p. 6). He goes on to assert that he "personally witnessed large, golf-ball sized hail striking his roof, gutters, and siding during the April 4, 2023 storm," and "that he inspected the [P]roperty the following morning and observed damage that was not present prior to storm." *Id.* He claims his sworn testimony is sufficient to create a genuine issue of material fact as to causation and coverage. *Id.* He also argues that he "is not required to prove damages with mathematical precision at the summary judgment stage." *Id.*

9

While this is true, Samuell has provided no legal argument in response to Foremost's position that regardless of whether there is a *prima facie* case for coverage, the insured must also "prove the nature, extent or amount of their loss to a reasonable degree of certainty before any award of damages can be made under [an insurance] policy." *Harbor House,* 915 F.2d at 318. Here, the Policy language specifies that Samuell, if he can prove coverage, is entitled to the "actual cash value," of the damaged property, using different methodologies depending on whether it is roof or non-roof material.

Federal Rule of Civil Procedure 701 typically permits property owners to offer opinion testimony on the value of their property, provided the opinion is "rationally based on the [owner's] perception," "helpful to ... determining a fact in issue," and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Taken together, these rules clearly prohibit property valuations and calculation of damages based on speculation or conjecture. *See Harbor House*, 915 F.3d at 318–20; *Foster v. PNC Bank, Nat'l Ass'n*, 52 F.4th 315, 322 (7th Cir. 2022); *Antrim Pharms. LLC v. Bio-Pharm, Inc.*, 950 F.3d 423, 432 (7th Cir. 2020).

Samuell's testimony does not meet this evidentiary threshold. Samuell has admitted that that he does not know when the roof was installed or by whom. He also stated that he lacks the expertise and knowledge to give an opinion regarding the roofs remaining life expectancy. (D. 19-4, ¶¶ 2, 6). Samuell also has no personal knowledge of any maintenance or repairs to roof (including details of what was done and the cost) following its installation. *Id.* at ¶¶ 4–5. During his deposition, Samuell further testified that he is not an expert in identifying and assessing hail damage, that he does not know the amount of damages he is claiming Foremost owes him, and that he is relying on others to develop estimates and opinions. (*See* D. 19-5, pp. 27, 42).

10

Samuell also has not disclosed any other witnesses under Rule 26(a) to testify regarding the "actual cash value" of his claim and has made no attempt to justify this failure. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a)…the party is not allowed to use that information or witness to supply evidence…at a trial, unless the failure was substantially justified or is harmless.").

As a result, Samuell's testimony alone regarding damages, at best, would offer no more than speculation and conjecture. In fact, he was unable to assign any monetary value to the amount of the damage. Accordingly, the Court finds that because he has failed to meet his burden of proving the extent and amount of his damages to a reasonable degree of certainty, Foremost is entitled to summary judgment.

## IV.   CONCLUSION

For the reasons stated above, Defendant's [19] Motion for Summary Judgment is GRANTED, The Clerk is DIRECTED to enter judgment in favor of Defendant and against Plaintiff. The case is now TERMINATED. The Clerk is DIRECTED to close this case.

ENTERED this 18th day of March 2026.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge

11